John A. Vogt (State Bar No. 198677)
javogt@goodwinlaw.com
Ryan D. Ball (State Bar No. 321772)
rball@goodwinlaw.com
GOODWIN PROCTER, LLC
660 Newport Center Drive, Suite 500
Newport Beach, CA 92660
Telephone: (949) 743-3412
Facsimile: (949) 743-3485

Attorneys for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MEAGHAN AUFRICHTIG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 8:26-cv-01918-DOC-AS<br><br>**DECLARATION OF DAN SMITH IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>DATE: OCTOBER 29, 2026<br>TIME: 8:30 A.M.<br>PLACE: COURTROOM 10A |

## DECLARATION OF DAN SMITH

I, Dan Smith, declare and state:

1. I am over the age of 18 years old. I am the Senior Director of Business Governance for ConsumerInfo.com, Inc. ("CIC") in Costa Mesa, California. CIC also does business as Experian Consumer Services ("ECS"). I have been employed by CIC since January 2010. I make this declaration in support of Experian Information Solutions, Inc.'s Motion to Compel Arbitration. My duties at CIC include supporting the consumer enrollment process into CreditWorks and related services. These duties require that I be familiar with, among other things, how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services. My duties also require that I am familiar with Experian's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, and date and time of the consumer's acceptance of the Terms of Use. I am likewise familiar with Experian's internal records that document consumers' ongoing use of their CreditWorks account, including when a consumer logs into their account or changes their account information, as well as any time a consumer receives an email or alert through their Creditworks membership. Based on my familiarity with the CreditWorks enrollment process and Experian's databases that store consumer account information, I retrieved this consumer's CreditWorks membership information upon receipt of the consumer's personally identifiable information. Once I located the consumer's CreditWorks membership information, I confirmed the consumer's membership details, such as the date and time of enrollment, the version of the Terms of Use they agreed to, and the exact path the consumer encountered when completing their enrollment into CreditWorks. The facts stated in this Declaration are of my own personal knowledge, including knowledge acquired

in the course and scope of my job responsibilities and through the review of pertinent documents maintained as business records by CIC in the course and scope of CIC's business, including Experian's internal records that store CreditWorks account information. If called upon to do so, I could and would competently testify to the facts stated below.

2. Experian Information Solutions, Inc. ("EIS"), the named defendant in the above-captioned lawsuit, is an affiliate of CIC/ECS. CIC/ECS and EIS are both wholly-owned subsidiaries of Experian Holdings, Inc., and the parent company is Experian plc.

3. Based upon my review of CIC's membership enrollment data maintained in the regular course of business, including data specific to Plaintiff's membership, on July 26, 2017, Plaintiff enrolled in CreditWorks. In order to successfully enroll, Plaintiff had to complete two webforms. The first form required Plaintiff to enter her personal information—*e.g.*, her name, address, phone number, and e-mail address. After she did so, Plaintiff had to click the "Submit and Continue" button on the form to continue with the enrollment process. A true and correct representation of the first webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as **Exhibit 1** to this Declaration. Plaintiff clicked the "Submit and Continue" button, and was presented with a second form to complete. Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button.

4. The second webform required Plaintiff to enter his social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure: "By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." A true and correct representation of the webform as it would have appeared when Plaintiff

enrolled in CreditWorks is attached as **Exhibit 2** to this Declaration. The phrase "Terms of Use Agreement" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage.

5. After entering her information, Plaintiff clicked the "Submit Secure Order" button, thereby accepting and agreeing to the Terms of Use Agreement. Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled in CreditWorks is attached as **Exhibit 3** to this Declaration. After enrolling, Plaintiff used the service, including after the version of the Arbitration Agreement in the Terms of Use in effect at the time she filed this lawsuit came into effect.

6. Every version of the Terms of Use that was in effect during Plaintiff's enrollment in CreditWorks contains an Arbitration Agreement, which requires her to arbitrate, among other things, all claims against "ECS" that "relate to" or "arise out of" her agreement. The Arbitration Agreement defines "ECS" to include its "affiliates." So does the "Overview and Acceptance of Terms" section of the contract. During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. By including EIS (an affiliate) within the definition of

"ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within the contract. Moreover, by including EIS within the "Overview and Acceptance of Terms" section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract. Additionally, the Arbitration Agreement expressly incorporates the AAA rules.

7. Every version of the Terms of Use Agreement in effect during Plaintiff's enrollment also has a section entitled, "Amendments," which advised her that she would be bound by the then-current Terms of Use each time he "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement: "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement."

8. On April 3, 2023, ECS amended the Terms of Use, including the Arbitration Agreement contained therein. ECS sent Plaintiff a copy of the amended Terms of Use via e-mail to the e-mail address associated with her CreditWorks account. After receipt of that e-mail notification, Plaintiff continued to use CreditWorks, thereby accepting the April 3, 2023 version the Terms of Use, including the amended Arbitration Agreement contained therein, in the manner called out in the agreement. A true and correct copy of that e-mail notification is attached as **Exhibit 4** to this Declaration.[1] A true and correct copy of the April 3, 2023 version of the Terms of Use is attached as **Exhibit 5** to this Declaration.

---

[1] Because every CreditWorks member was sent the identical e-mail, ECS does not retain a copy of the actual e-mails that were sent to every member. Instead, ECS retains the e-mail template. Thus, while the body of e-mail attached as Exhibit 4 to this Declaration is addressed to "Frank," that is because the e-mail template that was retained used the name "Frank" as the test user. The body of the e-mail that was sent to Plaintiff would have been identical to the one attached as Exhibit 4 hereto, with

9. On December 5, 2024, ECS amended the Terms of Use again, but did not make any changes to the Arbitration Agreement as reflected in the April 3, 2023 version of the contract. ECS sent Plaintiff a copy of the December 5, 2024 amended Terms of Use via e-mail to the e-mail address associated with her CreditWorks account. After receipt of that e-mail notification, Plaintiff continued to use CreditWorks, thereby accepting the December 4, 2024 version the Terms of Use in the manner called out in the agreement. A true and correct copy of that e-mail notification is attached as **Exhibit 6** to this Declaration.[2] A true and correct copy of the December 5, 20204 version of the Terms of Use is attached as **Exhibit 7** to this Declaration.

10. At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information. Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks. The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit

---

the exception that the e-mail would have said "Meaghan, check out your latest updates" in the body, and it would have had Plaintiff's Membership ID.

[2] Because every CreditWorks member was sent the identical e-mail, ECS does not retain a copy of the actual e-mails that were sent to every member. Instead, ECS retains the e-mail template. Thus, while the body of e-mail attached as Exhibit 6 to this Declaration is addressed to "Amanda," that is because the e-mail template that was retained used the name "Amanda" as the test user. The body of the e-mail that was sent to Plaintiff would have been identical to the one attached as Exhibit 6 hereto, with the exception that the e-mail would have said "Meaghan, we've updated our Terms of Use and Privacy Policy" in the body, and it would have had Plaintiff's Membership ID.

score tracking (including all the data and information contained therein), [and] the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s) . . . ."

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 21st day of September, 2026, in Costa Mesa, California.

**Dan Smith**